**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**DANIEL RAY LYONS,**

     **Plaintiff,**

**v.**                               **CASE NO. 2:11-cv-00381**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

     **Defendant.**

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Daniel Ray Lyons (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on March 13, 2009, alleging disability as of March 12, 2009, due to bilateral knee pain, diabetes, chest pain, arthritis, depression, possible bi-polar disorder, high cholesterol, high blood pressure, and carpal tunnel syndrome.  (Tr. at 12, 121-30, 172-79, 185-91, 204-12.)  The claims were denied initially and upon reconsideration.  (Tr. at 15, 54-58, 59-63, 65-67, 68-70.)  On December 30, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 76-77.)  The video hearing was held on September 8, 2010 before the Honorable Michelle Wolfe.  (Tr. at 23-49, 85, 92.)  By decision dated September 22, 2010, the ALJ determined that Claimant was not entitled to

benefits.  (Tr. at 12-22.)  The ALJ's decision became the final decision of the Commissioner on May 12, 2011, when the Appeals Council denied Claimant's request for review.  (Tr. at 1-5.)  On May 25, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads

to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2002).   The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 14.)   Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative joint disease of the knees, major depressive disorder, and anxiety disorder.  (Tr. at 14-15.)   At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 15-16.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 16-20.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 20.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as ticket taker and hand packer which exist in significant numbers in the national economy.  (Tr. at 21-22.)  On this basis, benefits were denied.  (Tr. at 22.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

"evidence which a reasoning mind would accept as sufficient to

> support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 51 years old at the time of the administrative hearing. (Tr. at 29.) He has a ninth grade education. (Tr. at 30.) In the past, he worked as a driver for a vending machine company, as a heating and air conditioning installer, and as fast food restaurant supervisor. (Tr. at 30-31, 174.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below:

Physical Health Evidence

On February 15, 2009, Claimant was admitted to Beckley Appalachian Regional Hospital Emergency for left arm pain. (Tr. at 228-41.) On February 16, 2009, Robert Yee, M.D. discharged Claimant with these comments:

4

> HOSPITAL COURSE:
> The patient was given 1800 calorie ADA 2 grams sodium diet...Serial ECGs were done which did not show any ischemic changes. CPK isoenzymes were also done which were all within normal limits...Electrolytes were normal...Chest x-ray was normal. Venous Doppler of the left leg failed to show any deep vein thrombosis. The patient was ordered ibuprofen 400 mg p.o. t.i.d. Toradol 30 mg was given IV one time on 02/15/09. The patient's left arm pain subsided. Since there were no other symptoms, he was discharged home on 02/16/09 with instructions to follow-up with me in 1 weeks time.

(Tr. at 230.)

On May 18, 2009, a State agency medical source completed a Physical Residual Functional Capacity Assessment. (Tr. at 242-50.) The evaluator, Rogelio Lim, M.D., stated Claimant's primary diagnosis was "Diabetes Type 2"; his secondary diagnosis was Non-cardiac chest pain"; and his "other alleged impairments" was "arthralgias." (Tr. at 242.) Dr. Lim concluded that Claimant could do medium work without any postural, manipulative, visual, communicative or environmental limitations. (Tr. at 243-46.) He commented: "Allegations not fully credible. Chest pain not cardiac and no ischemia documented. HPN and diabetes but no end organ damages. Full use of upper and lower limbs. Left arm pain but no objective findings." (Tr. at 249.)

On June 4, 2009, Taoufik Sadat, M.D., completed a diabetic eye examination wherein he concluded that Claimant did not have glaucoma; had "no diabetic retinopathy at this time" and "no treatment is necessary at this time, just yearly monitoring for any changes." (Tr. at 251.)

On September 16, 2008, February 11, 2009, March 2, 2009, April 27, 2009, May 11, 2009, June 2, 2009, June 16, 2009, July 20, 2009, August 11, 2009, Claimant had office visits with his treating physician, Robert Yee, M.D. (Tr. at 253-68.) Although the doctor's

notes are illegible, x-rays of Claimant's knees done on May 5, 2009 and May 26, 2009 indicate Claimant was treated for knee pain.  (Tr. at 264-66.)

On May 5, 2009, Andrew Goodwin, M.D. stated: "There are moderate degenerative changes in the right knee...No acute changes...There is no soft tissue abnormalities noted. There is no evidence of synovial effusion." (Tr. at 264.)   Dr. Goodwin noted: "No abnormalities are demonstrated in the 3 views of the left knee."  (Tr. at 265.)

On May 26, 2009, Claimant had an MR [magnetic resonance] of the left knee without contrast.  (Tr. at 266, 308.)  Manu Patel, M.D. stated in a report dated May 27, 2009: "Minimal knee effusion.  Question of torn posterior horn of the medial meniscus." Id.

On June 29, 2009, George Orphanos, M.D., Appalachian Regional Healthcare, Inc., stated that he was examining Claimant upon referral by Dr. Yee due to complaints of "chronic symptoms involving his left knee mostly but also on the right to a lesser extent." (Tr. at 306.)  Dr. Orphanos stated:

> He does not describe any specific history of injury.  A long time ago, he had cortisone injection in the left knee as he reports.  At that time, x-rays of the knees were done and he was told that he had arthritis.  Most recently, around March, 2009, he had x-rays in weightbearing position of both knees.  He was told that no abnormalities were found.   MRI evaluation was done subsequently on 05/26/09 which questioned the possibility of torn posterior horn of the medial meniscus.  No other specific abnormalities reported.  No chondromalacia patella or Baker's cyst was recognized and minimal knee effusion was reported.

> PHYSICAL EXAMINATION
> He is conscious, cooperative, not in acute distress.  He ambulates without support slightly favoring the left lower extremity...On clinical examination, he has no appreciable amount of swelling to indicate intraarticular effusion at this time, popliteal areas or cysts.  Some [decreased] range of motion of both knees especially on the left in the retropatellar area mostly.  He has diffuse pain over the left knee at this time.  McMurray's test was negative.

Full extension of the knee was present and flexion was functional.   No ligamentous instability was recognized.

IMPRESSION
Most probably degenerative changes involving the left knee, no specific clinical findings or MRI findings to indicate meniscal tear at this time.  The patient was advised to bring the x-rays done at Raleigh General Hospital for his knees in standing position and review the above.  Then, further evaluate the patient.

(Tr. at 306-07.)

On July 6, 2009, Dr. Orphanos stated that Claimant was seen "because of persistent symptoms involving his left knee."  (Tr. at 305.)  Dr. Orphanos concluded:

MRI of the left knee did demonstrate any significant abnormalities, with only ? [question] concerning a tear involving the medial meniscus, so this has been questionable.  The patient has more symptoms on the lateral side than the medial.  No significant articular effusion is present.  Mild degenerative changes of the left knee is present by plain x-ray.  The patient was advised at this time to go ahead with conservative management and steroid injection was given.  He was advised to watch his diet and blood sugar for the next couple of days.  Anti-inflammatory medications can be taken if tolerated, and also Chondroitin glucosamine.  We will see him again in the next couple of months to see how his progression is, or if necessary.

(Tr. at 305.)

On November 28, 2009, a State agency medical source completed a Physical Residual Functional Capacity Assessment.   (Tr. at 269-77.)   The evaluator, Marcel Lambrechts, M.D., stated Claimant's primary diagnosis was "Ty [type] 2 Diabetes", his secondary diagnosis, "left knee pain with mild effusion", and his other alleged impairments, "chest pain".  (Tr. at 269.)  He opined that Claimant could do medium work with his only postural limitation being that he could only "occasionally" do "climbing - ladder/rope/scaffolds", all other postures he could do "frequently."  (Tr. at 271.)  Dr. Lambrechts concluded that Claimant had no manipulative, visual, communicative or

7

environmental limitations, save to avoid concentrated exposure to extreme temperatures.

(Tr. at 272-73.)   Dr. Lambrechts commented:

> This claimant is on treatment for diabetes ty 2.   He has moderate hypertension and complains of his left arm pain but no abnormal findings were reported at the CE.   He has also mentioned chest pain but it appears to be non cardiac.   Residual functional capacity is completed without changes to the previous RFC.

(Tr. at 274.)

On February 8, 2010, Wendy Y. Gallaher, MPT [Master of Physical Therapy], Beckley Appalachian Regional Hospital Rehabilitation, completed a functional capacity evaluation of Claimant at the request of George Orphanos, M.D., wherein she concluded:

> The FCE results indicate Mr. Lyons is capable of working at a **Sedentary Physical Demand Level** for an 8 hour day according to the Dictionary of Occupational Titles, U.S. Department of Labor, 1991. His specific acceptable Occasional Carrying was 10 pounds. Push/Pull was 10 pounds. Carrying was 10 pounds, and Shoulder Lift was 10 pounds. Pt [patient] only completed 1 min. 48 sec. On the treadmill test and 2 cycles of stair climbing due to high c/o [complaints of] pain. Some cogwheel rigidity noted with MMT.
>
> **Behavioral Profile Effort**: Mr. Lyons demonstrated symptom/disability exaggeration behavior by our criteria. Pt scored a 5/21 on the Korbon's SARS, 3/5 on Inappropriate Symptoms Questionnaire, and a 3/10 on Pain Drawing, indicating non-organic signs are present. Pt scored both a high pain questionnaire profile and a high numeric pain rating profile, which is [sic] indicates symptom/disability exaggeration.
>
> **Recommendations**: According to the Dictionary of Occupational Titles, U.S. Department of Labor, a Food Service Supervisor should be able to perform at the Light Physical Demand Level. Based on this exam, out-pt [outpatient] PT [physical therapy] would be recommended for LE strengthening pain control. Recommend Sedentary employment at this time.

(Tr. at 302.)

On February 15, 2010, Dr. Orphanos stated in an Ambulatory-Patient Clinic Note:

LYONS, DANIEL...

The above named patient is a 51-year-old male who was seen for the first time June 29, 2009 at the request of Dr. Robert Yee because of persistent chronic symptoms involving both knees, especially the right. The patient reports that he has not been working for about a year now because of increasing endstage degenerative arthritis involving the right knee. Too a much lesser extent, arthritis of the left knee was noted. The patient has rather significant comorbidity related to diabetes, which has been not well controlled. The patient is not able to maintain activities and work. Considering his age and diabetes, recommend to continue with conservative management. The patient is applying for Social Security Disability and strong consideration should be given concerning his general medical condition especially diabetes and advanced degenerative changes. Symptoms expected rather to be worsened in the near future. He was referred to physical therapy. No surgical treatment is recommended at this time, and Dr. Yee can go ahead and arrange for social security disability.

(Tr. at 304.)

On February 18, 2010, March 18, 2010, April 20, 2010, and May 18, 2010, Claimant had office visits with Robert C. Lee, M.D. (Tr. at 310-13.) The notes are illegible save for "Wt. 222." Id.

On June 2, 2010, Dr. Orphanos stated in an Ambulatory-Patient Clinic Note:

This patient continues to have symptoms and has been retired from the work force according to his statement. He has been working for social security disability. No additional symptoms reported at this time. He continues to have right knee pain and also left and right elbow. No swelling of his right elbow. No intraarticular swelling detected on either knee at this time. Mostly symptoms on weightbearing. The patient is to continue to be under the care of his family physician, controlling his symptoms. Conservative management. Eventually, the patient will require total knee arthroplasty. Will see him again for any increased symptoms.

(Tr. at 315.)

On August 17, 2010, Brian Love, M.D., Love Family Practice Group, treated Claimant in order to establish care for his diabetes, high cholesterol, and leg pain complaints. (Tr. at 321-28.) Dr. Love noted: "Mental Illness. Pt states he sees Dr. Faheem for a chemical imbalance. Pt states he is doing well on his medication...Bipolar Disorder - Stable. He is

managed by Dr. Faheem for this matter.  We will send for records."  (Tr. at 321, 324.)

On August 23, 2010, Dr. Love saw Claimant in order to make "med adjustments/reaction."  (Tr. at 329.)

On August 24, 2010, Dr. Love stated in an addendum report: "Upon review of overnight oximetry report, pt [patient] has hypoxemia.  Will start 2L of O2 at night by nasal cannula.  Will also order home sleep study for further evaluation of hypoxemia and possible sleep apnea."  (Tr. at 331.)

On February 15, 2011, Dr. Love stated in a "To Whom It May Concern" letter:

> Mr. Lyons is under my direct medical supervision for multiple medical problems.  He suffers from debilitating pain and fatigue as well as other complications from his diabetic state.  Based upon information from Dr. Orphanos it is my opinion that employment (even sedentary) would represent undue burden upon this patient over time and recommend his consideration for total disability.

(Tr. at 334.)

Mental Health Evidence

Records indicate Claimant received treatment from Ahmed D. Faheem, M.D., a psychiatrist, on August 3, 2009, September 1, 2009, October 27, 2009, December 22, 2009, March 16, 2010, and June 18, 2010.  The treatment is detailed below. (Tr. at 297-301, 317-18.)

On August 3, 2009, Dr. Faheem stated that Claimant was "self referred..has been having a lot of problems with depression and anxiety." (Tr. at 299.)  In this initial evaluation, Dr. Faheem stated:

> The patient complains of being depressed for quite some time.  The patient has got worse since March 2009, when he quit his job at Burger King as a supervisor and states that he was trying to get to continue his job, but he states that he could not handle it.  He states that the stress was too much.  His

10

physical and psychiatric problems kept him from working and they continued to do so. The patient states that he hurts all the time. He has problems with arthritis and also has diabetes and high blood pressure...Also, his finances are stressful for him. He gets angry easily. He curses, throws things, and has problems in being around people. The patient states that sleep is restless. The patient used to drink about 40 ounces a day for 25 years, stopped a couple of weeks ago, and states that he is trying to stay clean. The patient states that it was affecting his health and diabetes. The patient denies any memory blackouts, seizures, or DTs. No drug abuse. No hallucinations or delusions. The patient had giving up thoughts about a month ago, but denies that he is actively suicidal or homicidal.

**LIVING ARRANGEMENTS**: The patient lives with his girlfriend and his three-and-a-half-month-old son and her son, who is 12.

**SOURCE OF INCOME**: His girlfriend's social security.

**DAILY ACTIVITIES**: Daniel is able to dress, clean, and wash himself. He does drive. He takes care of some chores around the house. His hobby includes playing guitar...

**LEGAL DIFFICULTIES**: The patient's [sic] spent about two weeks in jail, about 12 years ago for imprisonment [sic; embezzlement ?] from a vending company. He is still on probation...

**MARITAL HISTORY**: Married twice, first time for about 13 years, has a son; second marriage for 12 years, has no children; and third girlfriend is for about four years with a three-and-a-half-month-old son.

**OCCUPATIONAL HISTORY**: The patient last worked at Burger King as a supervisor for about six years and says he could not handle the employment...

**MENTAL STATUS EXAMINATION**: Tensed, anxious, edgy, and depressed. Oriented for time, place, and person. There was no evidence of any active hallucinations or delusions. Attention and concentration were impaired. Memory and recall were intact. Judgment was intact. There was no evidence of any looseness of associations, flight of ideations, or pressured speech. Fund of knowledge was adequate. He denied being actively suicidal or homicidal.

**DIAGNOSTIC IMPRESSION**:
Axis I:      1. Major affective illness (depression).
            2. Anxiety disorder, nos [not otherwise specified].
Axis II:     No diagnosis.

11

| | |
|---|---|
| Axis III: | High blood pressure, diabetes, hypercholesterolemia, chronic arthritis. |
| Axis IV: | Moderate. |
| Axis V: | Highest level of adaptive functioning currently appears to be 50-55 on the GAF scale. |

I have discussed various treatment options with Mr. Lyons. He wants to work with me on an outpatient basis. I have arranged for him to have psychological testing and be involved with counseling. I have decided to switch his Celexa to Cymbalta 30 mg daily for one week and then go to 60 mg a day, continue him on Seroquel 50 mg at night. I advised him about the risks and side effects, including FDA warnings on antidepressants. He is to be back to see me in one month. He can always come back earlier if things are not working out too good.

(Tr. at 299-300.)

On September 1, 2009, Dr. Faheem stated in an office treatment record:

David [sic; Daniel] indicated that he is still very nervous, anxious, and edgy. He states that the Cymbalta and the Seroquel are agreeing okay with him, but he is still very nervous and feels like he needs something to calm him down. He is to come for testing and counseling. Otherwise, he is doing okay. He is taking one day at a time.

He is alert, well oriented, and cooperative. No hallucinations or delusions. Attention and concentration are impaired. He is not actively suicidal or homicidal...

**PLAN**: I have decided to leave him on Cymbalta 60 mg daily, Seroquel 50 mg at night, and put him on Serax 15 mg three times a day. I helped him with supportive approaches. He is to [come] back to see me in a month.

(Tr. at 301.)

On October 27, 2009, Dr. Faheem stated in an office treatment record:

Daniel indicated that he is doing okay. He states that the medications I have him on seem to help out okay. He is not having any side effects. Overall, things appear to be progressing okay. He is to take one day at a time.

He is alert, well oriented, and cooperative. No hallucinations or delusions. Attention and concentration are impaired. Memory and recall are intact. Judgment is intact. He is not actively suicidal or homicidal...

> **PLAN**: I decided to leave him on Valium 5 mg three times a day, Seroquel XR 50 mg at night, and Cymbalta 60 mg daily.  I helped him with supportive approaches.  He is to see me in two months.  He can always come back earlier if things are not working out too good.

(Tr. at 297.)

On November 28, 2009, a State agency medical source completed a Psychiatric Review Technique form.  (Tr. at 278-92.)  The evaluator, John Todd, Ph.D., concluded that Claimant's affective disorder (depression) and his anxiety disorder were non-severe impairments.  (Tr. at 278, 281, 283.)  He found Claimant had mild limitations regarding activities of daily living, maintaining social functioning, concentration, persistence or pace, and no episodes of decompensation.  (Tr. at 288.)  He concluded that the evidence does not establish the presence of the "C" criteria.  (Tr. at 289.)  Dr. Todd commented:

> CLMT [claimant] is mostly credible w/ [with] recent OP [outpatient] psych Tx/meds [treatment/medications] from psychiatrist.  TS [treating source] noted difficulty w/ concentration though memory functions were intact. Clmt completed own forms relating difficult[y] due to c/o [complaints of] physical though performs personal and son (4 month old) care, simple meals, does no housework (girlfriend performs) though he drives, shops, manages finances and can pay attn [attention] 20-30 min [minutes].  There is no evidence of severe limitations due to a mental D/O [disorder] and is NON-SEVERE.

(Tr. at 290.)

On December 22, 2009, Dr. Faheem stated in an office treatment record:

> Daniel indicated that he is having problems with his knees.  He cannot exert himself much.  He is trying to cope.  He is to take one day at a time.

> He is alert, well oriented, and cooperative.  No hallucinations or delusions. Attention and concentration are impaired.  He is not actively suicidal or homicidal...

> **PLAN**: I have decided to leave him on Valium 5 mg three times a day, Cymbalta 60 mg daily, and Seroquel XR 50 mg daily.  He states that he cannot exert himself.  He also has problems with concentration and in maintaining interest.  He has not been able to keep a job.  He is applying for

13

disability.  He has an attorney, that is trying to help him.  He is to [come]
back to see me in three months.

(Tr. at 298.)

On December 31, 2009, Dr. Faheem completed a Medical Assessment of Ability to
Do Work-Related Activities (Mental) form.  (Tr. at 294-96.)  Dr. Faheem marked that
Claimant would have a "fair" ability to "deal with the public; use judgment; function
independently" in making occupational adjustments.  (Tr. at 294.)  He marked that
Claimant would have a "poor" ability to "follow work rules; relate to co-workers; interact
with supervisor(s); maintain attention/concentration."  Id. Dr. Faheem marked that in
regard to "making performance adjustments" Claimant would have a "fair" ability to
"understand, remember and carry out simple job instructions"  and a "poor" ability to
"understand, remember and carry out complex job instructions; understand, remember and
carry out detailed, but no complex job instructions". (Tr. at 295.)  In regard to "making
personal-social adjustments" Dr. Faheem marked that Claimant would have a "fair" ability
to "maintain personal ability; relate predictably in social situations" and a "poor" ability to
"behave in an emotionally stable manner; demonstrates reliability." Id. Dr. Faheem noted:
"[T]he patient also has multiple physical impairments which contribute to his difficulty in
work-related activities."  (Tr. at 296.)

On March 16, 2010, Dr. Faheem stated in an office treatment record:

Daniel indicated that he is still very nervous, anxious, and edgy.  He is having
recurrent anxiety and panic episodes.  He states that the diazepam at the
present dosage is not settling him down.  The Cymbalta and the Seroquel
seems to work out all right for him.  He is trying to cope.  He is to take one
day at a time.

He is alert, well oriented, and cooperative.  No hallucinations or delusions.
Attention and concentration are impaired.  Memory and recall are intact.  He

is not actively suicidal or homicidal...

PLAN: I have decided to change the diazepam to 10 mg three times a day, keep him on Cymbalta 60 mg daily, Seroquel XR 50 mg daily...He is to see me in three months.  He can always come back earlier if things are not working out too good.

(Tr. at 317.)

On June 18, 2010, Dr. Faheem stated in an office treatment record:

Daniel indicated that he is doing okay.  The medications I have him on are working.  He states that the addition of the Seroquel has helped.  His mood is better.  He is resting okay at night.

He is alert, well oriented, and cooperative.  No hallucinations or delusions. Attention and concentration are impaired.  He is not actively suicidal or homicidal.

DIAGNOSIS: Axis I:
    1.  Major affective illness (depression)(296.32).
    2.  Anxiety disorder, NOS (300).

PLAN: I have decided to leave him on diazepam 10 mg three times a day, Seroquel XR 50 mg a day, and Cymbalta 60 mg a day.  I helped him with supportive approaches.  He is back to see me in three months.

(Tr. at 318.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ did not consider the effect of his major depressive and anxiety disorders on his residual functional capacity to perform a limited range of light work and disregarded the treating physician's opinion. (Pl.'s Br. at 7-11.)     Specifically, Claimant asserts:

In this record, there is no analysis of the limitations imposed by major depressive and anxiety disorder by the administrative law judge...

The administrative law judge erred when she disregarded the opinion of the

15

plaintiff's treating physician regarding the plaintiff's functional capacity...

The administrative law judge's decision fails to give substantial weight to the opinion of Doctor Faheem whose opinion is supported by his opportunity to examine and treat the plaintiff on numerous occasions and by appropriate clinical findings without any explanation beyond a statement that "they are too extreme and not supported by the treatment records" without citing any examples which support her conclusion. We are left to speculate as to her reasons.

Due to the failure of the administrative law judge to provide controlling weight to the opinion of the plaintiff's treating physician regarding the plaintiff's functional capacity, without explanation, the administrative law judge's finding that the plaintiff can perform work at the light exertional level with the above-described limitations is erroneous.

(Pl.'s Br. at 8-9.)

The Commissioner's Response

The Commissioner responds that the decision is supported by substantial evidence because the ALJ reasonably accounted for the limitations arising from Plaintiff's depression and anxiety disorders when assessing his residual functional capacity. (Def.'s Br. at 10-13.)

The Commissioner asserts:

The ALJ found that Plaintiff's mental impairments would not prevent him from performing simple, routine, low stress tasks that require working with things rather than people. This assessment was quite reasonable in light of the evidence of record showing that Plaintiff underwent only infrequent, conservative mental health treatment; responded well to prescribed psychotropic medications; and that his condition stabilized following treatment...

Regarding Plaintiff's mental health treatment, the record shows that he only required infrequent mental health treatment. Specifically, Plaintiff only presented to his psychiatrist, Dr. Faheem, on six occasions over a ten month period (Tr. 297-301, 317-18). Dr. Faheem never recommended that Plaintiff seek more intensive treatment such as in-patient mental health treatment (Tr. 297-301)...

In addition, the evidence of record reveals that Plaintiff responded well to his mental health treatment and his psychotropic medications. In October 2009,

at his third treatment session with Dr. Faheem, Plaintiff reported doing "O.K.," that his medications were helping him, and that he did not experience any side effects from his medications (Tr. 297)...By August 2010, one month before the ALJ's decision, Plaintiff reported to Dr. Love that he continued to do well on his psychotropic medication (Tr. 321) and Dr. Love stated that Plaintiff's mood was euthymic (normal) and that his mental health impairment was stable (Tr. 324).

To the extent that Plaintiff did experience some functional limitations as a result of his mental health impairments, these limitations were only mild to moderate and were accounted for by the ALJ...

Furthermore, the ALJ correctly declined to give any weight to Dr. Faheem's December 2009 medical assessment finding Plaintiff had a seriously limited or no ability to function in several mental work-related areas (Tr. 294-95). As explained by the ALJ, such extreme limitations were not supported by Dr. Faheem's treatment records.   See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)...Also, when specifically asked to cite the medical clinical findings that supported his assessment, Dr. Faheem stated that Plaintiff's attention and concentration were only mildly to moderately impaired and that Plaintiff's "self-described" symptoms of depression and anxiety were only moderate (Tr. 295).   Such statements do not provide support for Dr. Faheem's extreme limitations.

Moreover, Dr. Faheem's opinions were also inconsistent with Dr. Love's treatment notes that showed Plaintiff's mental impairment was stable (Tr. 324)...Thus, the ALJ reasonably declined to give any weight to Dr. Faheem's December 2009 medical assessment.

(Def.'s Br. at 10-13.)

<u>Analysis</u>

<u>Mental Health, Residual Functional Capacity, Treating Physician</u>

Claimant argues that the ALJ "failed to consider the effect of the major depressive disorder and anxiety disorder on the plaintiff's residual functional capacity to perform a limited range of light work...(and) erred when she disregarded the opinion of the plaintiff's treating physician regarding the plaintiff's functional capacity."  (Pl.'s Br. at 7-8.)

At steps four and five of the sequential analysis, the ALJ must determine the

claimant's residual functional capacity (RFC) for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a) and 416.945(a) (2010). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

The RFC determination is an issue reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2010).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2010). Nevertheless, a treating physician's opinion

is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2010).  The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2010).  Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational.  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).  These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. §§ 404.1527(d)(2), 416.927(d)(2).

In an extensive 11-page decision, the ALJ made these findings regarding Claimant's mental health, Dr. Faheem's opinions, and Claimant's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he requires a

sit/stand option.  The claimant can occasionally balance, stoop, and crouch. He can never climb ramps, stairs, ladders, ropes, and scaffolds or crawl.  The claimant must avoid moderate to hot and cold temperature extremes, humidity, vibrations, and hazards such as machinery and heights.  He may require use of a cane.  The claimant is limited to simple routine tasks and working with things rather than people, in a low stress job...

Ahmed Faheem, M.D., at Appalachian Psychiatric Services indicated on August 3, 2009, the claimant presented self-referred with complaints of depression and anxiety.  Dr. Faheem noted the claimant was tensed, anxious, edgy, and depressed, but had no evidence of any active hallucinations or delusions.  He found the claimant's attention and concentration were impaired, but his memory, recall, and judgment were intact.  Dr. Faheem instructed the claimant to switch Celexa to Cymbalta and continue on Seroquel.  He also recommended the claimant be involved in counseling.  On September 1, 2009, the claimant complained that he was still anxious and Dr. Faheem added Serax to his medications.  Dr. Faheem noted on October 27, 2009, the claimant reported he was doing okay.  The claimant indicated the medications he was on seemed to help out okay and he was not having any side effects.  On December 22, 2009, Dr. Faheem indicated the claimant was taking Valium, Seroquel XR and Cymbalta.  Dr. Faheem noted the claimant was to return in three months (Exhibit 7F).

On March 16, 2010, the claimant reported to Dr. Faheem that he was still very anxious.  Dr. Faheem instructed the claimant to increase his Diazepam and stay on Cymbalta and Seroquel XR.  The claimant returned to Dr. Faheem on June 18, 2010, and reported he was doing okay and his medications were working.  Dr. Faheem noted the claimant's mood was better and he was resting okay at night.  He indicated the claimant was alert, well oriented, and cooperative (Exhibit 12F).

The claimant's treatment records reveal his psychological conditions are under fairly good control with medication.  In fact, the most recent treatment record reveals the claimant acknowledged his medications were working, which is contradictory to his testimony.  The evidence supports concluding the claimant's physical and psychological treatment is effectively maintained conservatively.  In addition, there is no evidence the claimant experiences side effects of any medications that would interfere with his ability to perform work activity.

Furthermore, the reported activities of daily living do not support the extreme physical or psychological limitations alleged by the claimant.  The claimant acknowledged during his testimony that he drove to the store, which was a 60 mile round trip.  He also reported on a questionnaire that he had no problems getting along with family, friends, neighbors, or others.  The

claimant noted he could pay attention and follow instructions (Exhibit 4E). In addition, the claimant reported to Dr. Faheem that he was able to dress, clean, and wash himself.  He indicated he took care of some chores around the house and his hobby included playing guitar (Exhibit 7F).

As for the opinion evidence, Wendy Gallaher, MPT, at BARH Rehabilitation indicated on February 8, 2010, the claimant underwent a functional capacity evaluation (FCE).  Ms. Gallaher noted the FCE results indicated the claimant was capable of working at a sedentary physical demand level.  However, Ms. Gallaher further noted the claimant demonstrated symptom/disability exaggeration behavior.   She indicated according to the Dictionary of Occupations Titles, U. S. Department of Labor, a Food Services Supervisor should be able to perform at the light physical demand level.  Ms. Gallaher indicated based on this examination, outpatient physical therapy would be recommended for lower extremity strengthening pain control.   She recommended sedentary employment for the claimant at this time (Exhibit 8F).  The undersigned gives no weight to the sedentary recommendation as it was given by an unacceptable medical source.  Further, Ms. Gallaher also noted the claimant demonstrated symptom/disability exaggeration behavior, which indicates the findings on the assessment and his credibility are questionable.

On August 3, 2009, Dr. Faheem opined the claimant had a global assessment functioning level of 50-55.  On December 31, 2009, Dr. Faheem completed a mental assessment form on which he indicated the claimant had no ability to deal with work stresses.  He found the claimant had poor ability to follow work rules; relate to co-workers; interact with supervisors; maintain attention and concentration; understand, remember, and carry out complex and detailed job instructions; and behave in an emotionally stable manner (Exhibit 7F).  The undersigned gives no weight to these opinions are [sic, as] they are too extreme and not supported by the treatment records.  In fact, Dr. Faheem's most recent treatment note reveals the claimant reported he was doing okay and his medications were working (Exhibit 12F).

Rogelio Lim, M.D., a State agency medical consultant, reviewed the record on May 18, 2009, and completed a physical assessment form on which he found the claimant could perform medium exertion (Exhibit 2F).  Furthermore, Marcel Lambrechts, M.D., a State agency medical consultant reviewed the record on November 18, 2009, and completed a physical assessment form on which he indicated the claimant could perform medium exertion with occasional climbing of ladders, ropes, or scaffolds.  The claimant had to avoid concentrated exposure to extreme cold and extreme heat (Exhibit 5F).  The undersigned gives the State agency opinions weight to the extent that they conclude the claimant can perform work activity.  However, the claimant is given benefit of doubt and found to be limited to light exertion with the

> restrictions indicated in his residual functional capacity. The evidence
> supports finding the claimant is not as limited as alleged and can certainly
> perform the jobs identified by the vocational expert.
>
> John Todd, Ph.D., a State agency medical consultant, reviewed the record on
> November 28, 2009, and completed a psychiatric review technique form on
> which he evaluated the claimant under Sections 12.04 and 12.06 of the
> Listings. Regarding the "paragraph B" criteria Dr. Todd found the claimant
> had mild restriction of activities of daily living; mild difficulties in
> maintaining social functioning; mild difficulties maintaining concentration,
> persistence, or pace; and no episodes of decompensation. Dr. Todd opined
> the evidence did not establish the presence of the "C" criteria and therefore
> indicated the claimant had no severe mental impairment (Exhibit 6F). The
> State agency opinions are given weight only to the extent that they support
> finding the claimant has no condition that meets or equals a listing. Although
> the claimant is not as psychologically limited as alleged, the evidence
> supports finding he has severe impairments of major depressive disorder and
> anxiety disorder.

(Tr. at 16-20.)

The court finds that the ALJ's decision reflects a careful consideration of Claimant's

impairments, both alone and in combination in keeping with the applicable regulations.

Contrary to Claimant's assertions, the ALJ considered the effect of the depression and

anxiety disorders on the Claimant's residual functional capacity and did not disregard the

opinion of the Claimant's treating psychiatrist, Dr. Faheem, when considering Claimant's

functional capacity. To the extent that Claimant did experience functional limitations as

a result of his mental health impairments, these limitations were only mild to moderate and

were accounted for by the ALJ in his hypothetical to the vocational expert: "limited to

simple routine tasks and working with things, rather than people, in a low stress job defined

as occasional decision making, no occasional changes in the work setting." (Tr. at 46.) The

ALJ did not err in declining to give weight to Dr. Faheem's assessment finding Claimant

had a very limited or no ability to function in several mental work-related areas. As

explained by the ALJ, such extreme limitations were not supported by Dr. Faheem's treatment records. The records of Dr. Faheem and Dr. Love clearly show that Claimant responded well to prescribed psychotropic medications and that his mental health conditions were stable. (Tr. at 317-18, 321, 324.)

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: June 28, 2012

Mary E. Stanley
United States Magistrate Judge